# UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF MISSOURI
# SOUTHERN DIVISION

| | |
|---|---|
| COURTNEY D. WILKINS, | ) |
| | ) |
| Petitioner, | ) |
| | ) |
| vs. | ) Case No. 11-3079-CV-S-DGK-P |
| | ) |
| MICHAEL BOWERSOX and | ) |
| CHRIS KOSTER,[1] | ) |
| | ) |
| Respondents. | ) |

## OPINION AND ORDER DENYING PETITION FOR HABEAS CORPUS

Petitioner, Courtney Wilkins, filed this pro se habeas corpus petition pursuant to 28 U.S.C. § 2254 on February 25, 2011, seeking to challenge his 2005 convictions and sentences for forcible rape, kidnapping, and first degree assault, which were entered in the Circuit Court of Greene County, Missouri.

Petitioner raises eight grounds for relief: (1) that trial counsel was ineffective in "fail[ing] to secure or preserve witnesses and evidence. . ." before trial; (2) that the trial court erred in failing to grant petitioner's first two requests to proceed pro se in his trial; (3) that the trial court erred in denying petitioner's motion to dismiss after his right to a speedy trial had been violated; (4) that the trial court erred in denying petitioner's request for hybrid representation; (5) that the trial court erred in denying petitioner's motions to be released, because the Greene County Jail (the "GCJ") lacked adequate legal resources for petitioner to prepare his defense; (6) that "[p]etitioner was deprived of his right of access to the courts when he was forced to go to trial pro se while confined to the GCJ,

---

[1]Since petitioner's sentences for kidnapping and assault are to run consecutive to his life sentence for forcible rape, petitioner is challenging both current and future sentences. Therefore, Missouri Attorney General Chris Koster will be added as a party respondent.

which did not have an adequate law library;" (7) that "[p]etitioner was deprived of his rights . . . when GCJ officials used administrative segregation as a retaliatory measure to hinder his ability to assert and sustain a defense;" and (8) that trial counsel was ineffective in "refus[ing] to provide any assistance or resources such as case law, legal research reference books or investigative work for pretrial preparation." (Petition, Doc. No. 1, pp. 5A-11E).

Respondent contends, *inter alia*, that petitioner waived any claim of ineffective assistance of counsel by proceeding pro se at trial; that the Supreme Court has foreclosed the possibility of habeas relief based upon lack of prison resources to prepare for trial; that petitioner's claim of being unable to prepare for trial is contradicted by his third ground, wherein he claimed he "was ready for trial;" and that all of petitioner's grounds are without merit.

## **SUMMARY OF THE FACTS**

On appeal from the denial of petitioner's Mo. Sup. Ct. Rule 29.15 motion for post-conviction relief, the Missouri Court of Appeals summarized the facts as follows:

> The record reveals [petitioner] was arrested on November 18, 2002, and he was thereafter charged with the following crimes: one count of the unclassified felony of forcible rape, a violation of section 566.030, RSMo Cum. Supp. 2006; one count of the Class A felony of kidnapping, a violation of section 565.110; and one count of the Class B felony of assault in the first degree, a violation of section 565.050. n.2 Attorney Rod Hackathorn ("Attorney Hackathorn") was appointed to represent [petitioner] on November 27, 2002, and he represented [petitioner] at the preliminary hearing on these charges. On January 22, 2003, Attorney Michaelle Tobin ("Attorney Tobin") entered her appearance and she began to represent [petitioner] thereafter.
>
> > n.2 [Petitioner] was also charged as a prior offender under section 558.016. Unless otherwise stated, all statutory references are to RSMo 2000.
>
> In February of 2003, [petitioner] filed several pro se motions despite

the fact that he was being represented by Attorney Tobin. Then in March of 2003, he filed a "Motion to Dismiss or Withdraw Appointed Counsel" in which he insisted he would not accept an attorney from the public defender's office because such attorneys "employ[ ] practices that would prevent [petitioner] from receiving effective assistance of counsel and a future appointment of counsel from that office will prevent [petitioner] from receiving a fair and impartial trial." He also filed a "Motion to Proceed Pro Se" on June 10, 2003.

The trial court held a hearing on these pro se motions on July 7, 2003, and [petitioner] related at that hearing that his appointed counsel had only spoken with him on two occasions and had not properly investigated his case as he had requested. The trial court discussed with [petitioner] the dangerous nature of a defendant proceeding to a jury trial pro se and ultimately denied all of [petitioner]'s pro se motions.

[Petitioner] then filed another motion to proceed pro se on October 14, 2003, and a hearing was held on this matter on October 28, 2003. At the hearing, [petitioner] again complained about Attorney Tobin's lack of investigation and her choice of trial strategies; however, he did admit that he had met with her a number of times since the last hearing. Further, Attorney Tobin informed the trial court that she had tracked down six of the seven witnesses recommended to her by [petitioner]. At the conclusion of the hearing, the trial court denied [petitioner]'s motion to proceed pro se.

On May 12, 2004, [petitioner] filed a "Motion to Withdraw" in which he requested the trial court dismiss Attorney Tobin as his counsel. This was followed on July 28, 2004, by another motion to proceed pro se; thereafter, on November 22, 2004, Attorney Tobin filed a motion to withdraw as [petitioner]'s counsel. A hearing was held on these motions on November 24, 2004. The trial court examined [petitioner] about his desire to proceed pro se and [petitioner] asserted he wanted to proceed pro se because he was more familiar with the facts of his case than Attorney Tobin was; he understood the charges against him and the procedures involved in a jury trial; he understood he would be signing a written waiver of counsel and agreed to do so; he knew what it meant to be charged as a prior offender and he was aware of the possible sentences he might incur; he had no mental defects or other issues that would affect his abilities to represent himself; he understood he would have to follow the procedural rules of evidence as an attorney is required to do; and he

understood how juries were selected, that he would have to call his own witnesses, and that he had the right to object to evidence offered by the State. He informed the trial court that he had an associates degree in paralegal studies and asserted he understood that if he were convicted he could not bring an ineffective assistance of counsel claim against himself. The trial court then found [petitioner] knowingly and voluntarily waived his right to counsel; permitted Attorney Tobin to withdraw; and appointed the public defender's office "to act as standby counsel, to be available to represent [petitioner] in the event that [petitioner] so requests or the court finds it necessary to terminate [petitioner's] self-representation."

Thereafter, [petitioner] filed numerous motions in which he sought help with his defense including a "Request to Modify Order of Standby Counsel and Request to Compel Request to Modify Order of Standby Counsel." A hearing was held on January 7, 2005, at which time [petitioner] informed the trial court that he wanted "assistance of counsel" from the public defender's office, but wanted no "representation" of counsel from that office. The trial court, inter alia, denied [petitioner]'s request to modify the trial court's previous order appointing standby counsel. However, another hearing was held on January 20, 2005, and at this hearing the public defender's office requested to withdraw from [petitioner]'s case completely. [Petitioner] continued to assert he wanted the resources the public defender's office could offer him in the way of preparation for his trial and that he wanted "at a minimum [to] have the assistance of the [p]ublic [d]efender's [o]ffice, not necessarily the representation." The trial court denied the public defender's request to withdraw; made arrangements with officials at the jail to explore some options for [petitioner] regarding phone privileges, access to visitors, and other matters; and otherwise denied [petitioner]'s requests.

On January 27, 2005, [petitioner] filed a pro se motion requesting the trial court reconsider its ruling on his request to modify the order for standby counsel. A hearing was held on this matter on February 2, 2005. The trial court interpreted [petitioner]'s requests in his motion as a request for the reappointment of counsel and the trial court reappointed the public defender's office to represent [petitioner].

The following week, on February 14, 2005, [petitioner] filed yet another motion to proceed pro se and a hearing was held on this matter on February 16, 2005. At the hearing [petitioner] explained to the trial court that he wanted to proceed pro se and that his motions to modify the appointment of the public defender's office as standby

Case 6:11-cv-03079-DGK   Document 19   Filed 10/12/11   Page 4 of 16

> counsel had been based on his erroneous interpretation of "assistance of counsel" versus "representation by counsel." He was again questioned in relation to his understanding of the charges against him, his experience in dealing with the law and legal situations, his understanding of the jury trial process, his recognition of the difficulty and dangers of self-representation, his understanding that his investigation would be hampered by his incarceration, and the fact that by representing himself he was waiving his right to assert ineffective assistance of counsel upon conviction. After affirming two additional times that he desired to represent himself at trial without standby counsel, the trial court found [petitioner]'s waiver was knowing and voluntary and the matter was set for a jury trial.
>
> A jury trial was held February 22, 2005, through March 1, 2005. [Petitioner] appeared pro se. At the conclusion of the evidence, the jury convicted [petitioner] of the three crimes set out above. He was then sentenced to the following consecutive terms: life imprisonment on Count I, twenty years on Count II, and thirty years on Count III. [Petitioner] filed a direct appeal and his convictions and sentences were affirmed in State v. Wilkins, 229 S.W.3d 204, 210 (Mo.App. 2007).

(Respondent's Exhibit K, pp. 1-6).

Before the state court findings may be set aside, a federal court must conclude that the state court's findings of fact lack even fair support in the record. Marshall v. Lonberger, 459 U.S. 422, 432 (1983). Credibility determinations are left for the state court to decide. Graham v. Solem, 728 F.2d 1533, 1540 (8th Cir. en banc 1984). It is petitioner's burden to establish by clear and convincing evidence that the state court findings are erroneous. 28 U.S.C. § 2254 (e)(1).[2] Because the state court's findings of fact have fair support in the record and because petitioner has failed to establish by clear and convincing evidence that the state court findings are erroneous, the Court defers to and adopts those factual conclusions.

---

[2]"In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

-5-

## GROUND 1 - INEFFECTIVE ASSISTANCE OF COUNSEL

In ground 1, petitioner contends that counsel was ineffective in failing to adequately prepare for trial. Respondent contends that petitioner waived his right to effective assistance of counsel by proceeding pro se at trial, as found by the Missouri Court of Appeals.

On appeal from the denial of petitioner's Rule 29.15 motion for post-conviction relief, the Missouri Court of Appeals disposed of ground 1 as follows:

> On October 9, 2007, [petitioner] filed a pro se Rule 29.15 motion. [Petitioner] was then appointed counsel and his counsel filed a statement in lieu of an amended motion on January 9, 2008.
>
> An evidentiary hearing on [petitioner]'s motion was held on February 11, 2009. n.3 The only testimony offered at the hearing was that of [petitioner]. [Petitioner] testified that he was arrested in November of 2002 and at that time Attorney Hackathorn was appointed to represent him. Thereafter, Attorney Tobin entered her appearance, and [petitioner] testified she did not meet with him until March of 2003 at which time [petitioner] gave her a list of about 30 witnesses to contact and a list of possible evidence to be gathered including phone records, certain medical records, and information from his home computer. n.4 He was unable to inform the motion court as to what these un-contacted witnesses would have added to his case and, instead, centered his complaints on Attorney Tobin's lack of contact with the witnesses. He stated no investigation into his case occurred by his appointed counsel until June of 2003. He further testified that in November of 2004 when he was finally granted permission to represent himself, there had still been little or no investigation completed by any of his appointed attorneys; however, he admitted Attorney Tobin's files revealed she had contacted some of his proposed witnesses. Further, despite his lack of help from Attorney Tobin, he admitted that he called four witnesses to testify at trial and that he had been able to obtain subpoenas as needed during his preparation for trial. He maintained that during his self-representation he was hindered by his appointed counsel's failure to investigate because key evidence was lost and witnesses were unable to remember certain events due to the passage of time. He further related that his appointed counsel's inattentiveness and lack of investigation "affected [his] ability to effectively represent [him]self at trial."

-6-

> n.3 At the hearing, [petitioner] filed a "notice of conflict with appointed counsel" in which he requested the motion court take judicial notice of the fact that he was "not in agreement with appointed counsel's position" on the issues raised in his pro se Rule 29.15 motion. The motion court noted [petitioner]'s assertions would be reflected in the record.
>
> n.4 [Petitioner] contended that certain pictures on his home computer would prove that the victim in his underlying criminal case had a motive to make up the allegations against him and that the phone records would reveal he was on the telephone at the time of the crimes.

On June 29, 2009, the motion court entered its "Order Denying Movant's Motion to Vacate, Set Aside, or Correct Judgment and Sentence Under Rule 29.15." The motion court found [petitioner] "failed to prove that his attorney was ineffective for allegedly failing to investigate witnesses and evidence" in that [petitioner] "failed to specifically describe the information and the witnesses his attorney allegedly failed to investigate;" he "was unable to list any names or potential contact information for these witnesses nor did he prove how these witnesses would have helped his defense;" and he "was very vague as to the evidence [Attorney] Tobin was alleged to not have investigated." Accordingly, the motion court denied [petitioner]'s request for postconviction relief under Rule 29.15. This appeal by [petitioner] followed.

[Petitioner]'s sole point relied on asserts the motion court erred in denying his Rule 29.15 motion "because a review of the record leaves a definite and firm impression that [petitioner] was denied effective assistance of counsel . . ." in that "his appointed counsel failed to act as a reasonably competent attorney would under the same or similar circumstances by failing to conduct an adequate investigation and failing to adequately prepare for trial." He maintains he was "prejudiced by his appointed counsel's failures in that important witnesses and evidence were not located and brought to the attention of the court and the jury, and counsel's inadequate investigation and preparation ultimately forced [petitioner] to proceed pro se to trial unprepared and without necessary evidence and witnesses."

Our review of the denial of a Rule 29.15 motion is limited to

-7-

determining whether the findings and conclusions of the motion court are clearly erroneous. Rule 29.15(k); *Williams v. State*, 168 S.W.3d 433, 439 (Mo. banc 2005). The motion court's findings and conclusions are clearly erroneous "only if, after a review of the entire record, the appellate court is left with the definite and firm impression that a mistake has been made." *State v. Ervin*, 835 S.W.2d 905, 928 (Mo. banc 1992); *Marschke v. State*, 185 S.W.3d 295, 302 (Mo. App. 2006). Additionally, "[c]redibility of [a] witness is a determination to be made by the motion court [and] [t]his Court must defer to the motion court's determination on matters of credibility." *Berry v. State*, 225 S.W.3d 457, 462 (Mo. App. 2007) (internal quotations omitted).

A movant bears the burden of proving, by a preponderance of the evidence, that he received ineffective assistance of counsel. Rule 29.15(i). To establish ineffective assistance of counsel, a movant must show that: (1) "counsel's performance did not conform to the degree of skill, care, and diligence of a reasonably competent attorney;" and (2) counsel's poor performance prejudiced the defense. *State v. Hall*, 982 S.W.2d 675, 680 (Mo. banc 1998); *see Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). To satisfy the first prong, a movant must demonstrate that "counsel's representation fell below an objective standard of reasonableness." *Id.* at 688. "The reviewing court presumes that the trial attorney's conduct was reasonable and was not ineffective." *Clayton v. State*, 63 S.W.3d 201, 206 (Mo. banc 2001). The second prong of the Strickland test is met when a movant shows that his attorney's errors affected the judgment. *Strickland*, 466 U.S. at 691. A movant can prove that the judgment was affected when there is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. Movant must prove each portion of this two-pronged performance and prejudice test in order to prevail on his ineffective assistance of counsel claim. *Sanders v. State*, 738 S.W.2d 856, 857 (Mo. banc 1987).

At the outset we note that "[w]hen an accused manages his own defense, he relinquishes, as a purely factual matter, many of the traditional benefits associated with the right to counsel." *Faretta v. California*, 422 U.S. 806, 835, 95 S. Ct. 2525, 45 L. Ed. 2d 562 (1975). For example, "a defendant who elects to represent himself cannot thereafter complain that the quality of his own defense amounted to a denial of 'effective assistance of counsel.'" *Id.* at 834 n.46; *see State v. Tyler*, 622 S.W.2d 379, 385 (Mo. App. 1981)

(holding that *Faretta*, 422 U.S. at 834, "does not guarantee [a] defendant that his self-representation must be effective and, indeed, warns that a defendant who conducts his own defense relinquishes many benefits associated with the right of counsel").

Here, the State cites this Court to *Gaye v. State*, 576 S.W.2d 554 (Mo. App. 1978), and urges that [petitioner] cannot bring an ineffective assistance of counsel claim for any reason, even against his pretrial counsel, based on the simple fact that he chose to represent himself at trial. In *Gaye*, 576 S.W.2d at 556, the movant represented himself at trial due to a finding by the trial court that his "adamant refusal of assistance by his employed counsel, an able member of the bar, constituted a waiver of representation." *State v. Gaye*, 532 S.W.2d 783, 790 (Mo. App. 1975). The movant was convicted and brought a motion for postconviction relief under Rule 27.26. n.5 *Gaye*, 576 S.W.2d at 556. One of the claims in his motion was that prior to his self-representation his last appointed counsel failed to properly "conduct a pretrial investigation." *Id.* The reviewing court found:

> [t]his ground is general and conclusional. It does not specify what information, facts, evidence or witnesses might have been disclosed if an investigation had been made. It does not demonstrate that the alleged neglect of counsel resulted in some prejudice to his position and deprived him of certain substantial rights that would affect the trial of his case. Furthermore, [the] movant waived a claim of ineffective assistance of counsel when he sought and was allowed to represent himself. This contention has no merit.

*Id.* (internal citations omitted) (emphasis added).

> n.5 "'Rules 29.15 and 24.035, effective January 1, 1988, replaced Rule 27.26.'" *Brown v. State*, 179 S.W.3d 404, 408 n.1 (Mo. App. 2005) (quoting *Fincher v. State*, 795 S.W.2d 505, 506 (Mo. App. 1990)).

We agree with the State that the present situation is akin to that found in *Gaye*, 576 S.W.2d at 556. As in *Gaye v. State*, [petitioner] repeatedly, affirmatively and clearly expressed his desire to the trial court to represent himself and to waive his right to counsel. In addition, at two separate hearings he informed the trial court that he understood that by proceeding pro se he was "giving up [his] right to

-9-

any [postconviction] relief based on ineffective assistance of counsel" and that by waiving counsel he would "not be able to come back . . . and complain that [his] lawyer did not do an adequate job of representing [him]." n.6 *See id.* at 556. Furthermore, the record does not support the proposition that any waiver of counsel was done under duress. *See Leady v. State*, 733 S.W.2d 502, 505 (Mo. App. 1987). It is clear from the record that [petitioner] voluntarily waived his right to counsel and that he did so with the understanding that he would not be able to raise a claim of ineffective assistance of counsel. *See Gaye*, 576 S.W.2d at 556. The motion court's ruling denying his request for relief was not clearly erroneous. Point denied.

> n.6 We note [petitioner] has not expressly challenged the actions of standby counsel. In this connection, we observe that a "[d]efendant cannot adamantly waive his right to trial counsel and then complain that counsel failed to actively participate at trial." *State v. Davis*, 867 S.W.2d 539, 546 (Mo. App. 1993).

(Respondent's Exhibit K, pp. 6-12).

The resolution of ground 1 by the state courts did not result in "a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or in "a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1) and (2) (as amended April 24, 1996), as defined by the Supreme Court in Williams v. Taylor, 529 U.S. 362, 412-13 (2000).[3]

Ground 1 is denied.

## **GROUNDS 2, 4 & 8 - THE RIGHT TO "HYBRID COUNSEL"**

---

[3]According to the opinion of Justice O'Connor, joined by four other members of the Court, "under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts. Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Williams, 529 U.S. at 412-13.

-10-

Case 6:11-cv-03079-DGK Document 19 Filed 10/12/11 Page 10 of 16

In ground 2, petitioner contends that the trial court erred by denying his first two motions to proceed pro se. In both of these motions, notwithstanding his request to represent himself, petitioner requested that the public defender assigned to his case be relegated to the role of assistant. Essentially, petitioner wanted his public defender to conduct research, gather information, and contact witnesses, while petitioner would represent himself at trial. See Respondent's Exhibit A, pp. 32-24, 40-42. In ground 4, petitioner contends that his right to hybrid counsel was violated by the trial court's refusal to grant him such. In ground 8, petitioner contends that standby counsel was ineffective by "refus[ing] to provide any assistance or resources. . ." The *sine qua non* of all of these claims is that petitioner was entitled to hybrid counsel. However, respondent correctly notes, as did the Missouri Court of Appeals, that neither Missouri law nor clearly established federal law entitles petitioner to hybrid counsel.

Petitioner presented this point in a supplemental, pro se brief filed on direct appeal (which he was authorized to file by the Missouri Court of Appeals), notwithstanding the points raised by his appointed counsel. The Missouri Court of Appeals disposed of his claim as follows:

> During this appeal, Appellant sought and was granted leave to file a pro se brief. A review of each point reveals none are meritorious. Appellant's major complaint in his pro se brief, and throughout the preliminary stages of the trial, stems from his belief that he was constitutionally entitled to "hybrid counsel." The courts of this State have consistently stated that a defendant has no right to hybrid counsel and we continue to adhere to that view today. *See State v. Hampton*, 959 S.W.2d 444, 447 (Mo. banc 1997); *State v. Williams*, 34 S.W.3d 440, 442 (Mo. App. S.D. 2001); *State v. Hurt*, 931 S.W.2d 213, 214 (Mo. App. W.D. 1996); *see also McKaskle v. Wiggins*, 465 U.S. 168, 183, 104 S. Ct. 944, 79 L. Ed. 2d 122 (1984) (the federal constitution does not require the trial judge to permit hybrid counsel).

The resolution of grounds 2, 4 and 8 by the state courts did not result in "a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as

-11-

determined by the Supreme Court of the United States" 28 U.S.C. § 2254(d)(1) and (2) (as amended April 24, 1996), as defined by the Supreme Court in Williams, 529 U.S. at 412-13.

Grounds 2, 4 and 8 are denied.

## GROUND 3 - SPEEDY TRIAL VIOLATION

In ground 3, petitioner contends that the trial court erred in denying his motion to dismiss his case for want of a speedy trial. Petitioner raised this point on direct appeal in his pro se brief. The Court of Appeals did not address his point at length, but rather found that it was non-meritorious, along with petitioner's other pro se claims raised on appeal. See Petitioner's Exhibit F, pg. 2 n.2.

The Supreme Court has outlined four factors to be considered in addressing a speedy trial claim: "[l]ength of delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant." Barker v. Wingo, 407 U.S. 514, 530 (1972). Each of these factors may be considered in turn.

First, the length of delay. A felony information against petitioner was filed on November 16, 2002, and his trial was held on February 22, 2005. See Respondent's Exhibit A, pp. 1-13. Therefore, petitioner experienced a roughly 27 month delay from the filing of the information to trial. However, this seemingly long delay must be examined in light of the other factors.

Second, the reason for the delay. As petitioner admits in his reply, "[e]very continuance that was asked for and granted was done so by [p]etitioner's appointed counsel . . ." Doc. No. 16, pg. 29 (emphasis added). Petitioner claims that he did not want counsel to ask for continuances. However, at that point the trial court had denied petitioner's motions to proceed pro se (see discussion of ground 2 above), which were defective in that petitioner was requesting hybrid counsel. Therefore, since petitioner was still represented by counsel at the time of the continuances, counsel was

-12-

authorized to ask for them. In sum, the reason for the 27 month delay between the filing of the information in this case and trial is attributable to petitioner.

Third is petitioner's assertion of his right. Petitioner first asserted his right to a speedy trial in February of 2003 and filed an amended motion in June of 2003. Therefore petitioner did promptly assert his right.

Finally, and most importantly, the Court may consider prejudice to petitioner from the delay. Here, there is little, if any, prejudice to petitioner. In his reply, he discusses two witnesses who he claims would have helped the defense. (Doc. No. 16, pg. 33). However, he provides no affidavits from these witnesses supporting these claims. He also claims that other witnesses, who did testify at trial, experienced "diminished recollection of events which impaired the effectiveness of their testimony. . ." (Doc. No. 16, pg. 33). Yet, petitioner does not cite instances in the record or give any other evidence of actual instances of diminished recollection. Such unfounded allegations by petitioner do not rise to the level of prejudice necessary to support his speedy trial claim.

In summary, petitioner's counsel asked for the continuances which delayed his case, largely precluding his claim of a speedy trial violation. Further, he fails to cite to the record or in any way show that the delay substantially prejudiced his case. Under the deferential review set forth in the AEDPA, this Court cannot say that the state courts' denial of his claim "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" 28 U.S.C. § 2254(d)(1) and (2) (as amended April 24, 1996), as defined by the Supreme Court in <u>Williams</u>, 529 U.S. at 412-13.

Ground 3 is denied.

### GROUNDS 5 AND 6 - TRIAL COURT ERROR IN DENYING PETITIONER'S MOTION TO BE RELEASED, AND IN DENYING PETITIONER THE RIGHT OF

## ACCESS TO THE COURTS

In grounds 5 and 6, petitioner contends that the trial court erred in denying his "motions to release, review conditions of release and modify the conditions of release," and that his right of access to the courts was violated when "he was forced to go to trial pro se while confined to the GCJ."[4] (Doc. No. 1, pp. 11A-11B).

Ground 5 is without merit. Petitioner, a prior and persistent felony offender, was charged with a brutal rape, kidnapping and first degree assault of his alleged victim. As noted by the prosecutor in a pretrial hearing, he had no family, money or property in the area. (Respondent's Exhibit B, pg. 43). Because petitioner was considered a potential danger to the community and a serious flight risk, the trial court was well within its rights to set bond at $200,000 in this case.

Ground 5 is denied.

In ground 6, petitioner claims that "he was forced to go to trial pro se while confined to the GCJ, which did not have an adequate law library for him to prepare for trial. . ." (Doc. No. 1, pg. 11B). However, his argument is foreclosed by the Supreme Court's decision in Kane v. Garcia Espitia, 546 U.S. 9 (2005), as follows:

> [Although] [t]he federal appellate courts have split on whether Faretta, which establishes a Sixth Amendment right to self-representation, implies a right of the pro se defendant to have access to a law library . . . it is clear that Faretta does not, as § 2254(d)(1) requires, "clearly establish" the law library access right.

Id. at 10. Since petitioner had no clearly established right to access to a law library, much less what

---

[4]As with ground 3 of the petition, grounds 5 and 6 were asserted in petitioner's pro se brief on direct appeal. The Missouri Court of Appeals did not address grounds 5 or 6 at length. Likewise, ground 7, discussed *infra*, was not addressed at length by the Court of Appeals.

-14-

he would deem a "sufficient" law library, this ground must be denied.[5]

Ground 6 is denied.

## GROUND 7 - PLACEMENT OF PETITIONER IN ADMINISTRATIVE SEGREGATION BY GCJ OFFICIALS

In ground 7, petitioner contends that he "was deprived of his rights . . . when GCJ officials used administrative segregation as a retaliatory measure to hinder his ability to assert and sustain a defense." (Doc. No. 1, pp. 11A-11D). Essentially, petitioner contends that he was unable to prepare his defense while in jail, and therefore the trial court should have released him. However, the record reflects that petitioner was placed in administrative segregation because of his own conduct violations, including "declaring war" on jail officials. See Respondent's Exhibit B, pp. 176-80 (in which petitioner threatened that officials may be receiving "days off with pay for injuries sustained in the line of duty."). Viewing these threats with deference to the judgment of prison officials, see Lewis v. Casey, 518 U.S. 343, 361 (1996), petitioner has not shown that his rights were violated. Finally, notwithstanding his placement in administrative segregation, the Greene County Circuit Court ordered prison officials to allow petitioner to make phone calls, interview witnesses, and provide petitioner a chair and work table. See Respondent's Exhibit A, pp. 10-11.

Ground 7 is denied.

## ORDER

---

[5]Additionally, petitioner cites to a previous Section 1983 civil case filed with this Court. This, he contends, establishes his right to an adequate law library. (Doc. 8, Exhibit B). However, Bounds v. Smith, 430 U.S. 817 (1977), cited in this Court's opinion, Wilkins v. Greene Cnty. Jail, No. 04-3146-CV-S-RED-P, dealt with the bringing of a Section 1983 claim for damages, not a request for habeas relief from a criminal judgment. Petitioner was a plaintiff in that case, and did not have a constitutional right to counsel. Here, however, he was not "forced" to go to trial pro se; rather, he elected to do so, and was thoroughly warned by the trial court of the ensuing consequences. The Supreme Court has explicitly stated, as seen above in Kane, that it has not clearly established a similar law library right for pro se criminal defendants as it has for pro se plaintiffs in civil cases.

Accordingly, it is **ORDERED** that:

(1) Missouri Attorney General Chris Koster is added as an additional party respondent;

(2) the above-captioned petition for a writ of habeas corpus is denied; and

(3) this case is dismissed with prejudice.

                        /s/ Greg Kays
                        GREG KAYS
                        UNITED STATES DISTRICT JUDGE

Kansas City, Missouri,

Dated:  October 12, 2011